## In re A. MARTIN DRYWALL AND ACOUSTICS, INC., Debtor.

### Thomas H. QUINN, Jr., Trustee, Plaintiff,

#### v.

### HOPE BUILDING CO., INC., Defendant,

#### v.

### NEW ENGLAND INTERIOR SUPPLY, INC., American Druggists Insurance Co., Third-Party Defendants.

#### Bankruptcy No. 8200155.
#### Adv. No. 820243.

United States Bankruptcy Court, D. Rhode Island.

Feb. 2, 1984.

Thomas H. Quinn, Jr., Quinn & Shechtman, Providence, R.I., for the trustee.

Peter L. Kennedy, Adler Pollock & Sheehan, Providence, R.I., for Hope Building Co., Inc.

Richard W. Petrocelli, Visconti & Heald, Ltd., Providence, R.I., for American Druggists Ins. Co.

## DECISION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

The debtor, A. Martin Drywall and Acoustics, Inc. (Drywall), and Hope Building Co., Inc. (Hope), entered into a contract wherein Drywall agreed to furnish materials, equipment, and labor for the installation of acoustic ceilings and metal-framed drywall at the Quonset Armory and Army Aviation Support Facility—Building No. 4, in North Kingstown, Rhode Island (Hope's Exhibit A). Drywall failed to complete its obligations under the contract, Hope completed the work, and deducted $15,246 from the amount owed by Hope to the debtor. The trustee disputes the amount so deducted and filed a complaint to recover most if not all of that item.

The sole question to be decided here is the value of the materials provided and

services performed by Hope to finish the job which A. Martin Drywall left incomplete. Hope charged the debtor for said work, as follows:

1. Labor – Total Hours
 368 hrs. at $25/hr. ................ $9,200.00
2. Supervision Pro-rated at 10%
 of hrs. 37 hrs. at $30/hr. ........ 1,110.00
3. Materials ......................... 1,990.48
4. Equipment – Lift Rental ........... 899.48

 Subtotal $13,200.00
5. Overhead 10% ...................... 1,320.00

 Subtotal $14,520.00
6. Profit 5% ......................... 726.00

 $15,246.00

All of these charges are disputed by the trustee. Since neither party offered in evidence detailed or reliable records, the determination of the propriety of each charge is largely the result of the Court's findings and conclusions based on the credibility and reliability of the witnesses.

 We reject at the outset Hope's contention that "[i]n order for the Court to find in favor of A. Martin and against Hope on Hope's back charges, the Court must determine that Hope's back charges were a fabrication." Post-Hearing Brief of Hope Building Co., Inc., at 3. That assertion is neither a correct statement of the law nor a reasonable conclusion to be drawn from the facts in this proceeding. Hope's only witness was uncertain about much of the work performed by Hope and by Drywall, and was unable to respond to questions about Hope's records relevant to work performed by Hope. Furthermore, Hope was the general contractor on the Quonset job, and its employees were on the site for many purposes other than the completion of the work left unfinished by Drywall. There is ample room for finding that Hope's figures are erroneous, inflated, or otherwise unjustified, without concluding that the back charges are "a fabrication."

With respect to the amount of drywall remaining to be installed when the debtor ceased work on or about February 26, 1982, the Court finds credible the testimony of Andre Martin, president of the debtor corporation, and Edward Conway, Martin's foreman on the Quonset job. Their testimony establishes that the section of the building in which drywall had not been installed was 30 to 40 feet long, and that the height of the wall averaged eight feet. The Court accepts the testimony of both witnesses that two persons working for three eight-hour days (a total of 48 hours) would have been sufficient to complete that part of the job.

With regard to the work performed by Hope on the acoustic tile ceiling, the Court accepts the testimony of Andre Martin that the metal grid had been completely installed by A. Martin Drywall, that some ceiling tile had been inserted in the grid, and that placement of the remaining tiles could be accomplished by one person in seven and one-half days, or 60 hours. We consider this evidence conservative and reasonable.

Gerard Colagiovanni, Hope's project manager, conceded that the debtor had installed "99.99%" of the ceiling grid, and that he was uncertain as to the amount of the drywall that Hope completed, or the details of the work involved. Mr. Colagiovanni relied upon informal time records listing hours worked by various employees at the site, in concluding that it required 368 hours for Hope to complete the ceiling and drywall work which the debtor left unfinished. Because (1) Hope's records do not sufficiently identify time charged to the A. Martin Drywall job,[1] because (2) Colagiovanni testified with virtually no independent knowledge, and because (3) the testimony of Andre Martin was reasonable and credible, we conclude that notwithstanding that Hope's employees may well have been on the building site (where Hope was the general contractor), many of the 368 hours in question should not be charged to A. Martin Drywall. The Court finds that the number

---

1. Hope's records of the hours worked by the employees in question consist of one printed "Weekly Time Sheet" and three hand-drawn charts of different sizes and containing varying details. One of the charts has no daily listing of hours worked, and indicates only that three employees each worked 40 hours that week. It is significant to the Court that none of the records makes any specific reference to A. Martin Drywall.

of hours which Hope should reasonably have been required to expend in completing the unfinished work, is 121—48 hours for completion of the drywall work, 60 hours for installation of the ceiling tile, and an additional 13 hours for cleanup.[2]

The trustee also objects to Hope's charge of $25.00 per hour for labor. Mr. Colagiovanni testified that Hope's actual cost per hour of labor in this case was $20 to $21, and based on this evidence we find that a charge of $21 is reasonable. Therefore, $2541 (121 hours at $21 per hour) is the proper charge for Hope's labor.

Hope also billed the debtor for "supervision" at the rate of $30 per hour, with one hour of supervision billed for each ten hours of labor. Mr. Colagiovanni conceded that this figure was an estimate, and could not explain what "supervision" really consisted of. Hope's evidence on this point is weak, and we accept the trustee's contention that whatever supervision was involved should be included as an item of overhead, for which Hope has been compensated elsewhere in this opinion. This part of Hope's claim is disallowed as a separate item.

With respect to materials, the trustee disputes the accuracy of Hope's charge of $1990.48, the total of four invoices from RICOM Construction Projects, Inc., to Hope. Andre Martin conceded that he did not pay RICOM for all materials used on the Quonset project, and the Court finds that the trustee has not shown these charges to be inaccurate. Accordingly, the debtor owes Hope $1990.48 for materials.

The trustee also disputes the charge of $899.48 for the rental of a Condor lift used in connection with the drywall work. The lift had been rented from Marr Scaffolding Company by the debtor, and it is undisputed that Hope continued the rental for six additional business days. Although it is possible that with better planning Hope might have returned the lift sooner, it was the debtor who caused the delay by ceasing work, and Hope's return of the lift after six days was reasonable. The debtor was therefore properly charged the full invoice price of $899.48 for the lift rental.

Both the overhead charge of 10% and the profit charge of 5% are reasonable, particularly in view of Mr. Martin's testimony that he uses a total of 20% for profit and overhead in his own calculations.

Accordingly, the Court finds that the reasonable value of the labor, services, and materials required to complete the debtor's obligations under its contract with Hope is as follows:

| | | |
|---|---|---:|
| 1. | Labor | $2541.00 |
| 2. | Materials | 1990.48 |
| 3. | Equipment — — Lift Rental | 899.48 |
| | Subtotal | $5430.96 |
| 4. | Overhead (10%) | 543.10 |
| | Subtotal | $5974.06 |
| 5. | Profit (5%) | 298.70 |
| | TOTAL | $6272.76 |

$6272.76 should be deducted from the amount which Hope Building Co., Inc., owes to the trustee of A. Martin Drywall and Acoustics, Inc.

Enter judgment accordingly.

---

**2.** Hope's charges for labor apparently include an unspecified number of hours for daily cleanup of debris. Without specific evidence on this point, the Court finds that 13 hours—approximately one hour for each eight-hour workday—is a reasonable figure.